IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NATHAN SANDS, | |
| Plaintiff, | |
| v. | Case No. 19-cv-300-JED-FHM |
| CORECIVIC, INC., *et al.*, | |
| Defendants. | *Attorney Lien Claimed* |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT CORECIVIC'S MOTION TO DISMISS**

COMES NOW the Plaintiff, Nathan Sands, by and through his attorneys of record, and for his response in opposition to the motion to dismiss filed by Defendant CoreCivic, Inc. ("CoreCivic") (Doc. 11), states the following:

### SUMMARY OF THE ALLEGATIONS

Nathan Sands ("Plaintiff" or "Sands") filed his Complaint against the Defendants on May 31, 2019. *See Complaint*, Doc. 2. Therein, he alleges that in November 2016, while Sands was in the custody of the Oklahoma Department of Corrections, he was placed at the Tulsa Transitional Center ("TTC"). *Id*. at ¶ 1. At the time, TTC was owned and operated by Defendant CoreCivic doing business as Avalon Tulsa. *Id*. at ¶¶ 2-6. While Sands was housed at TTC, he was **repeatedly sexually assaulted** by his TTC case manager, Defendant Julie Estes ("Estes"), an employee of CoreCivic, in the early months of 2017. *Id*. at ¶¶ 1-8, 20. The assaults were entirely preventable and were the foreseeable result of CoreCivic's policies, practices and/or customs of inadequate housing, supervision and security which were deliberately indifferent to Plaintiff's health and safety. *Id*. at ¶ 9. Specifically, Estes was hired at TTC, and allowed to work and be in close proximity with, vulnerable individuals such as Sands, *despite having a history of engaging in*

*sexual abuse in a confinement facility*, in violation of the Prison Rape Elimination Act ("PREA") of 2003, 34 U.S.C.A. § 30301, *et seq*., and the PREA Community Confinement Standards ("CCS"), 28 C.F.R. Part 11. *See id*. at 25-27.

In this lawsuit, Sands brings claims against the Defendants, and CoreCivic in particular, for violation of his civil rights under 42 U.S.C. § 1983. Sands specifically alleges that CoreCivic and Estes' supervisors are directly responsible for the abuse he suffered at the hands of Estes under § 1983.

## SUMMARY OF CORECIVIC'S ARGUMENT

In his Complaint, Sands specifically alleges that his claims against the Defendants were originally pled in Oklahoma District Court, in and for Tulsa County. *Id*. at ¶ 11. He further alleges that said matter was dismissed *without prejudice* on June 1, 2018 and was refiled in this Court within one (1) year pursuant to 12 O.S. § 100, known as the "Savings Statue." In its motion to dismiss, CoreCivic appears to alternatively argue that (1) Sands never brought claims against CoreCivic prior to March 2019; and (2) that the Savings Statute does not apply because "there was no dismissal by Plaintiff of claims made against CoreCivic, Inc." *See* Motion to Dismiss, Doc. 11, p. 4. Because a review of the previously filed action clearly demonstrates both that (1) Sands' claims against CoreCivic relate back to his initial petition filed February 22, 2018, *prior* to March 2019, *and* (2) that such claims were dismissed without prejudice on June 1, 2018 and refiled in the instant action prior to June 1, 2019 pursuant to 12 O.S. § 100, Defendant's motion should be denied.

## THE TULSA COUNTY ACTION

Mr. Sands filed a petition in Oklahoma State Court, in and for Tulsa County, on February 22, 2018, alleging that the Corrections Corporation of America ("CCA") operated the TTC and

hired Estes (whose name at the time the petition was filed was unknown and was identified as "Doe") despite her history of sexually abusing inmates at the Creek County Sheriff's Office. *See* Petition in *Sands v. Corrections Corporation of America*, Tulsa County Court Case No. CJ-18-795, attached hereto as Exhibit 1.[1] Sands specifically pled that CCA was a for profit private prison county headquartered in Nashville, Tennessee, and was the fifth-largest private corrections system in the county. CCA was the only named defendant in the case, the only party that was served and the only party the Tulsa County District Court recognized as a defendant in the case. *See, e.g.,* Oklahoma State Courts Network Docket Sheet in *Sands v. Corrections Corporation of America*, Tulsa County Court Case No. CJ-18-795, attached hereto as Exhibit 2.

CCA rebranded its corporate enterprise as CoreCivic, Inc., in late 2016. *See, e.g.,* Press Release from CCA a/k/a CoreCivic, "Corrections Corporation of America Rebrands as CoreCivic," accessed 8/14/19 at http://www.corecivic.com/news/corrections-corporation-of-america-rebrands-as-corecivic, attached as Exhibit 3. On April 9, 2018, CCA entered its appearance in Tulsa County Case CJ-18-795, specifically noting that CCA and CoreCivic were one and the same company, and that CCA was "now known as CoreCivic, Inc." *See* Entry of Appearance in *Sands v. Corrections Corporation of America*, Tulsa County Court Case No. CJ-18-795, attached hereto as Exhibit 4. CoreCivic filed a motion to dismiss in the case *specifically admitting* that it owns and operates the TTC where it houses inmates in the custody of the

---

[1] This Court may take judicial notice of facts which are a matter of public record where they are considered only to show their contends, not to prove the truth of matters asserted therein, without converting a motion to dismiss into a motion for summary judgment. *Morris v. City of Sapulpa*, Not Reported in F.Supp.2d, 2010 WL 3733527, *2 (N.D. Okla. Sept. 17, 2010), citing *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006). "Documents from prior state court proceedings may be treated as public records for these purposes." *Id*. (reviewing exhibits attached to briefing filed in the case related to the procedural history of the case in state court and treating as motion to dismiss).

Oklahoma Department of Corrections. *See* Defendant's Brief in Support of Motion to Dismiss filed in *Sands v. Corrections Corporation of America*, Tulsa County Court Case No. CJ-18-795, attached hereto as Exhibit 5, p. 2.² Notably, the motion was "submitted" by "**Defendant CoreCivic, Inc.,**" *id*. at p. 6 (emphasis added), and includes an affidavit by Cheryl-Lyn Dunker, a Senior Litigation Paralegal for "CoreCivic, Inc. (formerly known as Corrections Corporation of America, Inc.)." *Id*. at Exhibit 1, p. 1.

On June 1, 2018, Sands dismissed case CJ-2018-795. His lawyer at the time drafted the dismissal and, in the style of the case, listed what appears to be four (4) separate defendants: Core Civic Company of America, LLC; the Corporation Company of America, LLC, Oklahoma Department of Corrections; and Tulsa Transitional Center a/k/a Core Civic Company of America. *See* Dismissal filed in in *Sands v. Corrections Corporation of America*, Tulsa County Court Case No. CJ-18-795, attached hereto as Exhibit 6. The heading of the dismissal read: "Plaintiff's Dismissal Without Prejudice of Defendant State of Oklahoma *Ex Rel* Oklahoma Department of Corrections" and the body referred to "claims against Defendant State of Oklahoma *ex rel* Oklahoma Department of Corrections ("DOC") without prejudice to refiling." *Id*. Of course, Sands had not *brought* any claims against the DOC in CJ-18-795; he had only brought claims against CCA a/k/a CoreCivic. *See* Petition, Exhibit 1; Docket Sheet, Exhibit 2. The Tulsa County District Court correctly construed Sands' inartfully drafted dismissal as a dismissal of CJ-18-795, and specifically, of his claims against CCA. *See* Docket Sheet, Exhibit 2, p. 2 ("**Defendant**: CORRECTIONS CORPORATION OF AMERICA **Disposed**: DISMISSED WITHOUT PREJUDICE, 06/01/2018").

---

²      Defendant's motion to dismiss in the state action involved state law claims brought against the Defendants. In the instant action, Sands brings only federal, constitutional claims against the Defendants and thus the arguments CoreCivic raised in CJ-18-795 do not apply.

Sands' claims against CCA a/k/a CoreCivic were timely filed in CJ-2018-795, were dismissed on June 1, 2018, and have been timely refiled in this action pursuant to 12 O.S. § 100. Defendant's motion to dismiss should be denied.

**ARGUMENT AND AUTHORITY**

I. STANDARD OF REVIEW

Federal pleading rules require only that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose is to "give the defendant fair notice of what the …claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[3] A pleading states a claim for relief where the allegations, taken as true, set forth a claim that is "plausible on its face." *Id*. at 570. In making that determination, the Court must accept all well-pleaded allegations as true, even if doubtful, and must construe the allegations most favorably to the Plaintiff. *See, e.g., Massachusetts Bay Ins. Co. v. Langager,* 2017 WL 3586862, *1 (N.D. Okla. Aug. 18, 2017) (citing *Twombly,* 550 U.S. at 555). A claim is "facially plausible" if has "enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vogt v. City of Hays, Kansas*, 2017 WL 34455, *2 (10th Cir. Jan. 4, 2017), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'Asking for plausible grounds…does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal

---

[3] Following *Twombly*, there was discussion in the federal courts of whether the decision imposed a heightened pleading standard on plaintiffs. *See, e.g., Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012) (comparing cases) ("There is disagreement as to whether this new standard requires minimal change or whether it in fact requires a significantly heightened fact-pleading standard."). The Tenth Circuit has expressly **_rejected_** the argument that *Twombly* requires heightened fact pleading. *Id*. (emphasis added) citing *Iqbal*, 129 S.Ct. at 1950; *see also Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002). Rather than imposing a heightened standard, the Tenth Circuit has interpreted *Twombly* as "refining" notice pleading. *Id.,* citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

evidence [supporting the claim].'" *Massachusetts Bay,* 2017 WL 3586862 at * 2, quoting *Twombly,* 550 U.S. at 556. A well-pleaded Complaint may proceed "'even if it strikes a savvy judge that actual proof of those facts is improbable and that recovery is very remote and unlikely.'" *Id.*, quoting *Twombly*, 550 U.S. at 556.

II. SANDS' ALLEGATIONS AGAINST CORECIVIC RELATE BACK TO THE FILING OF HIS INITIAL PETITION IN TULSA COUNTY.

Sands does not dispute that the applicable statute of limitations for his claims against CoreCivic in this case is two (2) years. However, because his claims were originally filed prior to the expiration of the two (2) year limitations period and dismissed without prejudice, he is entitled to the protection afforded by Oklahoma's Savings Statute, 12 O.S. § 100.[4]

> Precedent teaches that: (1) section 100 is intended to preserve the right to commence a new action for the same causes as in the original action and to allow a trial on the merits; (2) the statute operates to extend a plaintiff's cause of action one year beyond the action's failure otherwise than on the merits; (3) causes of action for purposes of the savings provision are to be defined by a transactional approach; (4) all amendments to the petition which pertain to the same transaction as originally plead take effect in a § 100 suit from the time the action was commenced; and (5) the purpose of § 100 is remedial and its provisions are to be liberally construed.

*Wiley Elec., Inc. v. Brantley*, 1988 OK 80, 760 P.2d 182, 184 (citations omitted).

"Under the transactional approach, the operative event that underlies a party's claim delineates the parameters of his cause of action." *Id*. at n. 5, citing *Chandler v. Denton*, 741 P.2d 855, 862-863 (Okla. 1987). The Oklahoma Supreme Court has specifically held that a plaintiff is not bound by the original theories of recovery set forth in her original petition when she re-files

---

[4] The United States Supreme Court "'has made clear that a federal court applying a state's limitations period should apply that state's tolling provisions as well.'" *Morris*, 2010 WL 3733527 at * 3, *quoting Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 962 (10th Cir. 1991).

under § 100; rather, she may allege any theory of recovery against the defendant that arises out of the initially pled operative event:

> At the outset of our analysis we must determine here the meaning of the term "cause of action" as it affects the provisions of 12 O.S. 1981 § 100. The Court of Appeals apparently ascribed a narrow meaning to that phrase. It no doubt assumed that each *theory of recovery* pled by Chandler constituted *a distinct cause of action or a separate claim.* We disagree.
>
> Oklahoma jurisprudence uses the *transactional approach* for its definition of a "cause of action." The operative event that underlies a party's claim delineates the parameters of his cause of action. This conceptual approach ensures that litigants will be able to assert different theories of liability without violating the purposes of the statute of limitations. That statute is designed to ensure that a party has notice of a claim against him within a statutory period of time and an adequate opportunity to prepare his case before potential evidence is lost or becomes stale. The *wrongful act analysis* of a "cause of action" does not conflict with the purpose of statutory limitations.
>
> In accordance with the Code of Civil Procedure in force at the time, a plaintiff must allege the operative events upon which he relies for his theories of recovery within the time period prescribed by the applicable statute. At this point, the party required to respond to the allegations is put *on notice of the factual setting* underlying the legal demands pressed against him. Having been given an adequate opportunity to conduct discovery, the party is not prejudiced if the plaintiff, at a later time, adds any new theory of liability which rests upon the very same operative events. Our decisional law, which we reaffirm today, supports the use of a transactional approach in defining "causes of action."

*Chandler v. Denton*, 1987 OK 38, 741 P.2d 855, 862–63 (citations omitted) (emphasis in original).

Sands first alleged the pertinent operative events of his claim on February 22, 2018. *See* Exhibit 1. Since the operative event occurred in March 2016, Sands theories of liability subject to a two-year statutory limit are timely brought. *Id*. at 864 (affirming trial court decision to allow plaintiff to pursue "those theories of liability that had not been time-barred when the original suit was brought, even though these theories were not previously tendered to the trial court."); *see also Morris*, 2010 WL 3733527 (plaintiff's new constitutional claims in federal complaint did not constitute new cause of action and were "saved" by § 100).

As noted above, any amendments that were or could have been made to the initial filing, are preserved by § 100. "Section 100 is but an extension of the statutorily established limitations period." *Ross v. Kelsey Hayes, Inc.*, 1991 OK 83, 825 P.2d 1273, 1277-1278 (noting that § 100 is remedial in nature and must be liberally construed to hold that a defendant does not have to be served with summons in order to be subject to action refiled pursuant to § 100). Section 100 "serves solely to enlarge the time for the pursuit of a remedy that otherwise would be barred." *Id*. at 1279 (emphasis omitted). Pursuant to 12 O.S. § 2015(C)(3)[5], an amendment that changes the name of a party defendant or adds a new defendant relates back to the date of the original pleading if (1) the claims against the new or renamed defendant arise out of the same operative event, (2) the new party received timely notice of the action such that he/she/it will not be prejudiced in maintaining

---

[5] The Federal Rules of Civil Procedure provide that an amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back;
(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint [i.e., 90 days after the complaint is filed], the party to be brought in by amendment:

  (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

  (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

As set forth in Defendant's motion, Oklahoma law provides the applicable statute of limitation and thus reference is made herein to 12 O.S. § 2015(C)(3) pursuant to FED. R. CIV. P. 15(c)(1)(A). However, FED. R. CIV. P. 15(c)(1)(C) is substantively identical to 12 O.S. § 2015(C)(3), with the exception that the relevant time limit for notice is 90 days under Rule 15 pursuant to Rule 4(m), and 180 days under 12 O.S. § 2015(C)(3) pursuant to 12 O.S. § 2004(I). Because CoreCivic appeared in the Tulsa County case 46 days after the petition was filed, *see* Exhibits 1 and 4, the time for notice requirement under either the federal or the state rule is satisfied and the naming of CoreCivic as a party defendant relates back under either rule.

a defense on the merits, and (3) knew or should have known that but for a mistake in naming, the action would have been brought against him/her/it.

Although Sands' original claim was brought against CCA, *CoreCivic* appeared in that action, acknowledged it was the successor company to CCA, and defended against Sands claims. Sands' claims against CoreCivic in the instant lawsuit arise out of the same operative events as the claims originally pled against CCA, CoreCivic received timely notice of the original action such that it is not prejudiced in maintaining a defense on the merits, *see* note 2, and CoreCivic knew that but for a mistake in naming, Sands' initial claims against CCA would have been brought against it. *See* Exhibit 4; *see also* note 2; *Clark v. Phillips Petroleum Co.*, 1984 OK CIV APP 6, 677 P.2d 1092 (applying relation back to new corporate defendant added in action re-filed under § 100 that was not named in original complaint where new defendant acquired assets and assumed liabilities of defendants named in first lawsuit).

Accordingly, Sands' claims against CoreCivic relate back to the date his initial petition was filed on February 22, 2018, which was timely filed as admitted by Defendant in its motion,[6] and the same are thus "saved" by 12 O.S. § 100.

III. SANDS' CLAIMS WERE DISMISSED OTHERWISE THAN ON THE MERITS ON JUNE 1, 2018 AND REFILED WITHIN ONE (1) YEAR PURSUANT TO 12 O.S. § 100.

It is undisputed that Sands' state court lawsuit was dismissed without prejudice on June 1, 2018. *See* Exhibits 2 and 6. The fact that the dismissal itself was inartfully drafted does not mean the case was not dismissed. The only defendant who had appeared in the case was CCA/CoreCivic and thus that is the only defendant to whom the dismissal could possibly apply. The Tulsa County

---

[6] *See* Defendjant's Motion to Dismiss (Doc. 11), p. 3 (acknowledging that the two (2) year limitations period did not run until March 2019).

Court certainly considered the matter dismissed as to CCA/CoreCivic on June 1, 2018. *See* Exhibit 2. Under the transactional approach, the matter as to CoreCivic was dismissed along with CCA.

## CONCLUSION

Sands' claims against CCA (now known as CoreCivic, Inc.) were dismissed on June 1, 2018. Sands' claims were re-filed within one (1) year pursuant to 12 O.S. § 100 and Sands' claims against CoreCivic relate back to the date his initial petition was timely filed in Tulsa County against CCA. As such, Defendant's motion to dismiss should be denied.

    Respectfully submitted,

    SMOLEN | LAW, PLLC

    /s/Laura L. Hamilton
    Donald E. Smolen, II, OBA #19944
    Laura L. Hamilton, OBA #22619
    James D. Sicking, OBA #18467
    611 S. Detroit Ave.
    Tulsa, OK 74120
    P: (918) 777-4LAW (4529)
    F: (918) 890-4529
    don@smolen.law
    laura@smolen.law
    jds@smolen.law

    -and-

    Michael I. Aston
    907 S. Detroit Ave., Ste. 1130
    Tulsa, OK 74120
    P: (918) 402-0085
    F: (918) 583-5114
    Michaelaston1546@att.net

    *Attorneys for Plaintiff, Nathan Sands*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 16th day of August, 2019, the above and foregoing was submitted to the Clerk of Court using the ECF System for filing and for transmittal of a Notice of Electronic Filing to all counsel who have appeared in this case.

                /s/Laura L. Hamilton